IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL P. OPELA, SR.,

        Plaintiff,

v.

WAUSAU WINDOW AND WALL, APOGEE
ENTERPRISES, INC, APOGEE WAUSAU
GROUP, INC, TUBELITE, INC, ALUMICOR,
INC, HARMON, INC, and LINETEC,

        Defendants.

OPINION AND ORDER

17-cv-124-wmc

---

Plaintiff Michael Opela, Sr., brings this action against defendants Apogee Enterprises, Inc., and its subsidiaries for infringement of the whistleblowing protections contained in the Consumer Product Safety Improvement Act ("CPSIA"), 15 U.S.C. § 2087, and in the Sarbanes-Oxley Act, 18 U.S.C. § 1514. The complaint alleges that defendants violated Sarbanes-Oxley and CPSIA by terminating Opela's employment after he raised concerns about potentially defective manufacturing materials. Before the court is defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. #6.)[1] For the reasons stated below, the court will grant defendants' motion to dismiss as to claims asserted against defendant Apogee Enterprises and certain of it subsidiaries, but will deny the motion with respect to defendant Apogee Wausau Group, Inc. d/b/a Wausau Window and Wall.

---

[1] Also pending is plaintiff's related motion for leave to file an amended opposition brief (dkt. #14), which the court will deny.

## A. Defendants' Corporate Structure

Apogee Enterprises, Inc., ("Apogee") is a publicly-traded Minnesota corporation and wholly owns all other defendants. Apogee Wausau Group, Inc. ("AWG") is a Wisconsin corporation, while Tubelite, Inc. ("Tubelite"), Harmon, Inc. ("Harmon") and Alumicor, Ltd. ("Alumicor") are incorporated in Michigan, Minnesota, and Ontario, Canada, respectively. Finally, although separately named as defendants, Wausau Window and Wall is actually a separate business unit of AWG, operating as a separate business under that name ("Wausau" for short), and Linetec is actually the inventory department of AWG. Neither Wausau nor Linetec are separate legal entities.

According to the complaint, Wausau "provides aluminum window and wall products for a variety of buildings." (Compl. (dkt. #1) ¶ 14.) These products include window frames, bolts and curtain wall products and are used in schools, hospitals, condominiums, offices, commercial buildings and government structures. Among other companies, Wausau sells its products to Harmon, Tubelite and Alumicor.

Apogee's Vice President, Gary Johnson, asserts by declaration that the parent company Apogee does not produce any products whatsoever. He further states that all defendants (besides Apogee) customarily sell their products -- including the window frames, bolts and curtain wall products manufactured by Wausau -- to contractors and

---

[2] Except as specifically noted, the following factual background is derived from the allegations in the complaint.

subcontractors, *not* to the consumers through "big box" stores.  (Decl. of Gary Johnson (dkt. #8) ¶ 6.)[3]

## B. Opela's Employment and Internal Complaints

Opela began working for AWG as a Structural Engineer Manager in its Wausau business unit in December 2013, and he received his salary from AWG and Apogee. During the course of his employment, Opela discovered that Wausau was manufacturing window frames, bolts and curtain wall products using materials that did not meet the strength requirements set out by the Occupational Safety and Health Administration ("OSHA").  Wausau also received no certification from its suppliers regarding the strength of these materials.  Nevertheless, Wausau used the materials in window frames, bolts and curtain wall products that were then distributed to Harmon, Alumicor, Tubelite and other companies.  Opela believed that Wausau's non-compliant products had already been installed in offices, condominiums and government structures, and that they posed a safety risk to consumers at those locations.  Additionally, Opela believed that Wausau, AWG and Apogee had misstated their finances by failing to disclose to shareholders its use of defective materials.

---

[3] As will be discussed in detail below, the facts provided in the Johnson declaration are considered solely for the purpose of determining the court's subject matter jurisdiction. *See Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008) (explaining that the "district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists" (internal citation and quotation marks omitted)).  However, the court does not rely upon them in analyzing defendants' motion under Rule 12(b)(6), which includes whether the facts alleged in the complaint meet the statutory definition of "consumer product." *See Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636 (7th Cir. 2017) (explaining that review of a Rule 12(b)(6) motion "is limited to the pleadings").

Opela reported his concerns about the defective materials and financial statements to several of his superiors at Wausau. Meetings with management occurred the week of September 15 to September 20, 2014, which included Opela's immediate supervisor at Wausau, as well as Wausau's Vice President of Continuous Improvement, Wausau's President and four other Wausau employees. These meetings prompted no remedial action from management, although Wausau's Purchasing Manager, Victor Corungi, did confirm that the suppliers and Linetec had not properly tested the materials used by Wausau.

Four days after Opela's meetings with management had concluded, a Wausau HR representative approached him about information she had received suggesting that Opela had failed to disclose a previous employer when he applied to work for Wausau. Although Opela provided evidence that he had in fact disclosed his previous employer during the application process, Wausau terminated his employment the next day, September 25, 2014, ostensibly because of this failure to disclose.

Following his termination, Opela pursued reinstatement through Apogee's internal appeal process. That process involved meeting with Apogee's Vice President of Human Resources, Warren Planitzer, to whom Opela again relayed his concerns regarding faulty materials and financial misconduct. According to the complaint, Planitzer described the meeting as a "SOX" meeting, and he later acknowledged that Opela had disclosed his former employer before beginning work. Still, Planitzer stated that Wausau would not reinstate Opela because "management did not support" his return to work. (Compl. (dkt. #1) ¶ 49.)

## C. Administrative and Other Court Proceedings

In October of 2014, Opela filed a complaint with OSHA in which he alleged that his termination from Wausau had been unlawful retaliation for identifying defective materials used in manufacturing its products. The original OSHA complaint named "Apogee International," Wausau and Tubelite as defendants and alleged a violation of SOX (Sarbanes-Oxley) by "Apogee International" and a violation of CPSIA by Wausau and Tubelite; it did not allege a violation of both SOX and CPSIA by any single company. (Decl. of Alex Hontos, Ex. 1 (dkt. #9-1) 1.)[4]

The defendants in the OSHA complaint responded in a joint position statement on January 23, 2015. The position statement accurately informed OSHA of the relationship between Apogee, Wausau, Tubelite and AWG, clarifying that "Apogee International" is not a known legal entity. In a footnote, however, the January 23 position statement expressly included AWG and Apogee in the proceedings:

> Although Mr. Opela has not named Apogee Wausau Group, Inc., or Apogee Enterprises, Inc., in his Complaint, as Wausau Window and Wall's parent companies, each of these entities deny any wrongful conduct against Mr. Opela and *this Position Statement is filed on their behalf as well*.

(Hontos Decl., Ex. 2 (dkt. #9-2) 2) (emphasis added).) While Opela's response to the position statement requested that the administrative complaint be amended to include

---

[4] Defendants attached six documents from the administrative proceedings to their brief in support of the motion to dismiss. Although the facts contained in those documents are not part of the pleadings, the court will take judicial notice of them for purposes of deciding the motion. *See Buyers Prods. Co. v. CURT Mfg. LLC.*, No. 16-cv-220-wmc, 2017 WL 1498154, at *2 (W.D. Wis. Apr. 26, 2017). Defendants also attached two declarations to their brief: one, made by defendants' attorney, which simply verified the exhibits; the other was made by Apogee Vice President Gary Johnson, which is described above.

"Apogee Enterprises and its subsidiaries," (*id.*, Ex. 3 (dkt. #9-3) 1), the response itself named only Apogee, Harmon, Wausau, Tubelite, Alumicor and Linetec (among other entities not party to this suit), without specifically identifying Apogee Wausau Group in its list of known subsidiaries (*id.*).

OSHA dismissed Opela's complaint on June 17, 2016, determining that he had not engaged in activity protected under CPSIA or Sarbanes-Oxley. Opela appealed that decision to the Department of Labor's Office of Administrative Law Judges on July 14, 2016. On February 2, 2017, the ALJ dismissed the SOX claim against Apogee because the administrative complaint had failed to allege sufficient connection between the defective materials used by Wausau and potential shareholder fraud. The ALJ also dismissed the CPSIA claims against all entities except Wausau on the basis that Opela had not alleged that they were his employers within the meaning of the statute.[5] As a result, the CPSIA case proceeded solely against Wausau, with a trial before the ALJ scheduled for March 21, 2017. Instead, Opela filed this lawsuit in the Western District of Wisconsin on February 21, 2017 -- 19 days after the ALJ had dismissed all defendants except Wausau. In response to the filing of this lawsuit and Opela's motion, the ALJ dismissed the remaining CPSIA claim against Wausau on February 23.

Defendants filed a motion to dismiss in this court on April 13, 2017, arguing (among other things) that the ALJ's order of February 2 constituted the final order of the Secretary of Labor and could only be reviewed in the Court of Appeals. On May 4, 2017,

---

[5] Although Opela's administrative complaint does not appear to have brought a CPSIA claim against the parent company, the ALJ's order of February 2 also dismissed a CPSIA claim against Apogee as well.

Opela filed a brief in opposition to defendants' motion to dismiss, which did not contest defendants' premise that the court lacked jurisdiction to review the ALJ's order of February 2. Rather, Opela argued that this court could hear the claims against Wausau and AWG.

On April 17, 2017, four days after defendants filed their motion to dismiss, Opela also filed a petition for review of the ALJ's order of February 2 in the Court of Appeals for the Seventh Circuit. Both Opela and defendants filed jurisdictional memoranda in the Seventh Circuit addressing the question of whether the February 2 order constituted the final order of the Secretary of Labor, since it had dismissed all defendants except Wausau. The Secretary added to these submissions, his own separate jurisdictional memorandum on May 17, similarly arguing (among other things) that the February 2 order could not operate as the final order of the Secretary because review in the Seventh Circuit would violate the Department of Labor's precedent on interlocutory appeals from some but not all of the administrative claims. Nevertheless, on June 5, the Seventh Circuit ordered that the appellate case against Apogee, Tubelite, Harmon, Alumicor and Linetec proceed, although it asked the parties to address jurisdiction again in their briefs. *Opela v. Acosta*, No. 17-1788 (7th Cir. June 5, 2017) (dkt. #20). On August 8, 2017, Opela then moved for voluntarily dismissal of the appellate case, and the Seventh Circuit granted that motion on the same day under Federal Rule of Appellate Procedure 42(b).

OPINION

## I. Subject Matter Jurisdiction

In evaluating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court must accept uncontested factual allegations in the complaint as true, but may look to other documents submitted by the parties, including affidavits, to determine whether jurisdiction is appropriate. *Leveski v. ITT Educ. Servs.*, 719 F.3d 818, 828 (7th Cir. 2013). In doing so, the court will draw all reasonable inferences in the plaintiff's favor. *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000).

Defendants challenge the subject matter jurisdiction of the court on three grounds. *First*, defendants argue that the ALJ's decision of February 2, 2017, operates as the final decision of the Secretary of Labor and is thus reviewable only in the Seventh Circuit, which would prevent this court from exercising jurisdiction over any party dismissed in that order. *Second*, defendants argue that plaintiff never named AWG as a defendant in the administrative proceedings at the Department of Labor and, therefore, neither exhausted his administrative remedies with respect to that specific defendant, nor alleged in his complaint that he had administratively exhausted his claim. *Third*, defendants submit that they do not manufacture "consumer products," as that term is defined in the Consumer Product Safety Act ("CPSA"),[6] which precludes this court's exercise of subject matter

---

[6] CPSA refers to the Consumer Product Safety Act, 15 U.S.C. § 2051, *et seq*. CPSIA refers specifically to Section 219 of the Consumer Product Safety Improvement Act of 2008, Public Law 110-314, 122 Stat. 3016 (Aug. 14, 2008), codified at 15 U.S.C. § 2087.

jurisdiction over any claims arising under that statute. The court addresses each of these arguments below.

## A. Claims Dismissed in the ALJ's Order of February 2, 2017

Since the ALJ dismissed all claims against defendants except the CPSIA claim against Wausau in his order of February 2, 2017, defendants first argue that plaintiff's claims against these defendants, Apogee, Tubelite, Harmon, Alumicor and Linetec, can only be reviewed in the Seventh Circuit.[7] The court agrees.

A plaintiff bringing a whistleblowing claim under CPSIA or Sarbanes-Oxley must initially file a complaint with OSHA. 18 U.S.C. § 1514(b); 49 U.S.C. § 42121(b); 29 C.F.R. § 1980.103; 15 U.S.C. § 2087(b). After OSHA makes an initial determination, either party may appeal that decision to the Office of Administrative Law Judges. A party wishing to appeal the decision of an ALJ must file a petition for review with the Administrative Review Board ("ARB"). 29 C.F.R. § 1980.109(e); 29 C.F.R. § 1983.109(e). The Secretary of Labor issues a final decision in a case either through the ARB or, if no petition for review is filed with the ARB, 14 days after the date of the ALJ's decision. *Id*. A party can only appeal the final order of the Secretary to the appropriate Circuit Court. 15 U.S.C. § 2087(b)(5); 18 U.S.C. 42121(b)(4). As an alternative route, if the Secretary does not issue a final decision within 210 days of the filing of a CPSIA claim, or within 180 days of the filing of a SOX claim, the complainant may bring an action for *de novo*

---

[7] Because AWG was not dismissed in the ALJ's order, as it was not a named defendant in the administrative proceeding, its unique status is addressed below.

review in the appropriate district court.   15 U.S.C. § 2087(b)(4); 18 U.S.C. § 1514A(b)(1)(B).

Here, the ALJ dismissed all defendants in the administrative complaint except Wausau on February 2, 2017.  By plain operation of the statute, that order became the final order of the Secretary 14 days later, on February 16.  Plaintiff acknowledged as much by filing his petition for review in the Seventh Circuit and by failing to dispute that very argument in his original opposition brief to defendants' motion to dismiss.[8]  Accordingly, the claims against Apogee, Harmon, Tubelite, Alumicor and Linetec -- which were, until recently, being litigated in the Court of Appeals -- are dismissed for lack of jurisdiction.

### B. Administrative Exhaustion

#### 1. Failure to Name AWG in the Administrative Complaint

Defendants contend that because AWG was never named as a defendant in the administrative complaint at the Department of Labor, plaintiff never exhausted his

---

[8] Although the Secretary's jurisdictional memorandum filed in the Court of Appeals arguably raised a question as to whether the ALJ's order of February 2, which dismissed some, but not all defendants, constituted the final order of the Secretary, plaintiff never ripened that argument before the Seventh Circuit, choosing instead to dismiss the appeal *and* the underlying action before the ALJ.  Relatedly, plaintiff now regrets his decision in his original opposition to the present motion to abandon any claims against the defendants that were the subject of his Seventh Circuit petition, and he requests leave to file a revised brief, apparently to incorporate the Secretary's arguments in the Seventh Circuit on administrative exhaustion.  This ongoing procedural dance by plaintiff has got to end somewhere.  Having lost before the ALJ as to all defendants save one and with that decision previously before the court of appeals, this court is disinclined to allow yet another reversal in strategy, even if the statutory scheme permitted *de novo* review of a final decision by the Agency which it plainly does not.  *See Stone v. Instrumentation Lab. Co.*, 591 F.3d 239, 248 (4th Cir.2009) (requiring strict interpretation of § 2087(b)).  Regardless, plaintiff's claims against these other entities do not survive scrutiny, since none were Opela's employers as discussed further below.  As such, the court will deny plaintiff's motion to file a revised opposition.

administrative remedies with respect to that party, and the court may not exercise jurisdiction over it.   Generally, as discussed above, plaintiffs seeking to bring a whistleblowing complaint under CPSIA or Sarbanes-Oxley must first file with OSHA.  *See* 18 U.S.C. § 1514(b); 49 U.S.C. § 42121(b); 29 C.F.R. § 1980.103; 15 U.S.C. § 2087(b). In support of their motion, defendants cite two cases dismissing claims against an individual defendant because the plaintiff had not named it in the caption of the underlying administrative complaint:  *Bozeman v. Per-Se Techs., Inc.*, 456 F. Supp. 1282 (N.D. Ga. 2006); *Hanna v. WCI Cmtys., Inc.*, No. 04-80595-CIV-HURLEY/LYNCH, 2004 U.S. Dist. LEXIS 25652 (S.D. Fla. Nov. 15, 2004).  While these two cases describe the type of inquiry that courts should conduct when deciding whether an omission of a party in an administrative complaint precludes the court from exercising jurisdiction over that party, the facts here are substantively different from those in *Bozeman* and *Hanna*.

In *Hanna*, the court determined that the dispositive inquiry for purposes of exhaustion is whether the complaint "afford[s] OSHA the opportunity to resolve the allegations administratively," not whether the defendant had notice of the claims against him.  2004 U.S. Dist. LEXIS 25652, at *8 (quoting *Willis v. VIE Fin. Grp., Inc.*, No. 04-435, 2004 U.S. Dist. LEXIS 15753 (E.D. Pa. Aug. 6, 2004)).  After finding that OSHA did not have an opportunity to review claims against one of the individual defendants named in the federal lawsuit, the court dismissed the claims against that defendant.[9] Similarly, the court in *Bozeman* dismissed two individual defendants not previously named

---

[9] The *Hanna* decision is silent as to the exact relationship between the dismissed individual defendant and the other defendants, although he had been identified as an actor in the administrative complaint.

in a Sarbanes-Oxley administrative complaint. Both the *Hanna* and *Bozeman* decisions, therefore, turned on a finding that *OSHA*, rather than the individual defendant, was not provided notice that it was required to investigate actions of that defendant, and thus was not given the opportunity to render a decision. *See Bozeman*, 456 F. Supp. at 1358; *Hanna*, 2004 U.S. Dist. LEXIS 25652, at *9.

Unlike the situations in *Hanna* and *Bozeman*, OSHA had ample notice here that plaintiff's administrative complaint required it to investigate AWG. As an initial point, AWG conducted business under two different trade names, both of which were named as defendants in the OSHA complaint. Furthermore, and more importantly in light of the courts' holdings in *Bozeman* and *Hanna*, OSHA was completely aware of the relationship between AWG and the named defendants, having been given notice by defendants themselves. As discussed above, AWG went so far as to file a position statement with OSHA as a defendant, specifically calling attention to the fact that it expected its liability to correspond to Wausau's, which of course is correct since Wausau is only a division of AWG doing business under that name, not a separate legal entity. Therefore, OSHA knew that in investigating Wausau (and Linetec) it was investigating AWG and that resolving any claim against Wausau would also resolve that claim against AWG. Even if unaware that Wausau was standing in AWG's shoes despite notice, OSHA's analysis would be the same: AWG was plaintiff's *de facto* employer, working as he was for one of its business units. For all intents and purposes then, AWG *was* a defendant in the administrative case.[10]

---

[10] Also of note is the fact that plaintiff's response to defendants' position statement at OSHA requested that the complaint be amended to include "Apogee Enterprises and its subsidiaries." (Hontos Decl., Ex. 3 (dkt. #9-3) 1.) At that time, OSHA was already aware that AWG was a

Cases accommodating mis-named defendants provide further support for finding exhaustion satisfied. A plaintiff's naming error in the summons and complaint does not bar a district court from exercising personal jurisdiction over the correct defendant. *E.g., Temps v. Ascot Oils, Inc.*, 561 F.2d 41, 44 (7th Cir. 1977) ("A defendant who is clearly identified by a summons and complaint and who has been served with those documents may not avoid the jurisdiction of the district court merely because he is incorrectly named in them."). The *Temps* court looked to whether there was any doubt as to who the plaintiff had intended to sue and considered such factors as the ease with which the correct defendant could be identified and the burden imposed on the defendant to clear up any ambiguity as to its identity. *Id*.

Courts have been particularly willing to excuse a failure to name the correct legal entity in situations involving a business unit or d/b/a. *See, e.g., Triangle Distributing, Inc. v. Shafer, Inc.*, No. 90-4042, 1991 U.S. App. LEXIS 20042 (6th Cir. Aug. 23, 1991) (unpublished decision); *Fakhri D.B.A. Int'l Trading Co. v. United States*, 507 F. Supp. 2d 1305 (Ct. Int'l Trade 2007); *Brackens v. USA Credit*, 233 F.R.D. 613, 614 (D. Kan. 2005).[11]

---

subsidiary of Apogee, which reinforces the conclusion that the agency knew to investigate AWG. However, it is somewhat troubling that plaintiff did not include AWG specifically by name in his request to amend the administrative complaint. Doing so would have spared him (and others) much time and effort.

[11] In fairness, there are cases finding the failure to name the correct legal entity dispositive, but typically where the business unit *was* a separate legal entity or the plaintiff should have known the correct entity to sue. *E.g. Hawthorne v. Citicorp Data Sys.*, 219 F.R.D. 47 (E.D.N.Y. 2003) (vacating default judgment and refusing to amend the complaint because there was a doubt as to whether plaintiff intended to sue his bank or the collections department of his bank, a separate legal entity); *Flynn v. Best Buy Auto Sales*, 218 F.R.D. 94 (E.D. Pa. 2003) (denying plaintiff's motion to amend the caption because plaintiff's failure to name defendant corporation correctly was due to plaintiff's own negligence in preparing the complaint). Neither exception applies here.

In these so-called "misnomer" cases, courts typically look to whether "it was clear both that the defendant facing judgment was the party the plaintiff did in fact intend to sue, and that the defendant was actually aware of the complaint against it." *Hawthorne*, 219 F.R.D. at 50.

That plaintiff intended to bring his complaint against AWG is less than clear, but clear enough to permit an inference in plaintiff's favor. Indeed, plaintiff conveyed his intent to sue his employer from the beginning of the administrative complaint. (Hontos Decl., Ex. 1 (dkt. #9-1) 2) ("I am filing against Wausau Window and Wall, my employer").) Although he may have mistaken the legal name of his employer -- and failed to correct it once the error had been pointed out -- plaintiff obviously intended his complaint to be directed against his actual employer under his CPSIA claim, and his employer duly received and responded to the complaint. Additionally, the correct defendant was easily identified with little burden to defendants, who pointed out plaintiff's naming error and were able to swiftly clear up the nature of their corporate structure.

Because AWG is fairly interchangeable with Wausau, effectively participated as a defendant in the administrative proceedings in this case, and was treated as a defendant by OSHA, the court concludes that plaintiff exhausted his administrative remedies as to that particular defendant.

### 2. Failure to Plead Administrative Exhaustion

In a related argument, defendants assert that plaintiff's complaint is deficient because it does not plead any facts relating to administrative exhaustion. In support, defendants cite *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000), for the proposition

that a plaintiff must plead exhaustion of administrative remedies.  The present case is distinguishable from *Massey* on at least two grounds.  First, in response to a motion to dismiss, the plaintiff in *Massey* conceded that he had not in fact exhausted his administrative remedies.[12]  Here, plaintiff did exhaust his administrative remedies before the Department of Labor.  Indeed, since the court may consider the extrinsic materials before it, such as the administrative record, *see Leveski*, 719 F.3d at 828, there is no doubt that the proper administrative proceedings took place, regardless of plaintiff's failure to allege the details in the complaint.

Which brings the court to the second distinction from *Massey*:  here, plaintiff at least loosely referenced the administrative exhaustion requirement in the complaint.  Specifically, the complaint alleges that "[t]his action is authorized and instituted pursuant to 29 C.F.R. § 1983.114" (Compl. (dkt. #1)¶ 1), and that regulation describes the conditions under which jurisdiction arises in district courts, or in other words, the conditions required to exhaust administrative remedies.  Although plaintiff's passing reference to the administrative regulations would not of itself suffice to plead administrative exhaustion -- assuming such an allegation is even required -- it does distinguish the present case from *Massey*, in which the plaintiff did not even attempt to

---

[12] The *Massey* decision relied upon by plaintiff actually stemmed from an earlier decision of the Seventh Circuit in *Massey v. Helman*, 196 F.3d 727 (7th Cir. 1999), in which Massey had argued that the PLRA's exhaustion requirement did not apply.  *Massey v. Wheeler*, 221 F.3d at 1034 (citing *Massey v. Helman*, 196 F.3d at 732-33).  The passage cited by plaintiff restated the *Massey v. Helman* holding without extensive discussion, in part because there was no doubt that Massey had not exhausted his administrative remedies.  *Id*.  As a result, the Seventh Circuit did not address the situation in the present case, in which plaintiff did exhaust his administrative remedies and simply failed to allege as much.

argue that he had exhausted his administrative remedies. Plaintiff's cursory effort to plead administrative exhaustion -- combined, more critically, with evidence of *actual* exhaustion of administrative remedies manifest in defendants' own exhibits -- is enough to overcome this challenge to the sufficiency of the pleadings.

### C. Scope of CPSIA

Finally, defendants rightly point out that CPSIA attaches liability only to defendants engaged in making or distributing "consumer products." *See* 15 U.S.C. § 2087; 15 U.S.C. § 2068(a)(1).[13] Defendants argue that they do not make or distribute "consumer products" as the term is defined in the statute, and that this court lacks jurisdiction over any CPSIA claims as a result. While generally defendants may bring this argument in a 12(b)(6) motion for failure to state a claim -- and the court considers the argument under that framework below -- defendants are mistaken in describing this as a jurisdictional requirement. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510 (2006) (exhorting district courts to draw a finer line between 12(b)(1) and 12(b)(6) decisions).

Jurisdiction "refers to a tribunal's power to hear a case." *Morrison v. Nat'l Australia Bank, Ltd.*, 561 U.S. 247, 254 (2010) (citing *Union Pacific R. Co. v. Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Central Region*, 558 U.S. 67, 81 (2009)). District courts usually obtain jurisdiction through broad statutory grants of authority like those found in 28 U.S.C. § 1331 and § 1332. *Arbaugh*, 546 U.S. at 512. While district courts might also

---

[13] Plaintiff does not specifically cite § 2068 as giving rise to his cause of action, but it serves here to illustrate how § 2087 ultimately relates back to the definition of "consumer product." The complaint's omission of § 2068 is discussed in greater detail below.

gain jurisdiction through a specific statutory provision like that in 15 U.S.C. § 2087(b), which is at issue in this case, not all elements of a statute are jurisdictional. Instead, a condition described in a specific statutory provision that is necessary for the statute to apply is more likely to speak to the *merits* of a claim -- that is, to determining whether a court already properly exercising its jurisdiction will find the statute applies to the conduct in question. In particular, disputes that ask a court to determine the reach of a statute, or the type of conduct addressed by a statute, goes to the merits of a statutory claim, not the jurisdiction of the court. *Morrison*, 561 U.S. at 254.

The Supreme Court has acknowledged the historic struggle to articulate whether their decisions speak to the jurisdiction of the court or to the merits of a statutory claim. *See Arbaugh*, 546 U.S. at 510. In more recent years, however, the Court has established a "readily administrable bright line" to separate statutory conditions that define the merits of a statutory claim from those that outline the jurisdictional boundaries of a court:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Id*. at 515-16 (citations omitted). Further, in determining whether Congress has made an element jurisdictional, courts may consider whether or not the element appears in a separate provision of the statute, or "whether it speak[s] in jurisdictional terms or refer[s] in any way to the jurisdiction of the district courts." *Id*. (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)).

Nothing in CPSA suggests that Congress intended to limit a district court's threshold exercise of jurisdiction to cases involving consumer products. In fact, the relevant statute expressly confers jurisdiction on the district courts upon certain action or inaction by the Secretary of Labor as discussed above. 15 U.S.C. § 2087(b)(4). All references to consumer products are located elsewhere in the statutes. For instance, "consumer product" is defined in 15 U.S.C. § 2052, along with the definitions of other statutory terms. Similarly, 15 U.S.C. § 2068, which prohibits certain conduct involving consumer products, neither speaks in jurisdictional terms nor refer in any way to the jurisdiction of the courts. Instead, these provisions lay out the type of conduct prohibited by CPSA and the types of products the statute is intended to reach. These provisions go to the merits of plaintiff's claims, not the court's jurisdiction to consider it. *Cf. Miller v. Herman*, 600 F.3d 726, 731-32 (7th Cir. 2010) (the definition of "consumer products" in the Magnuson-Moss Warranty Act was not jurisdictional but spoke to the merits of the case).

## II. 12(b)(6) Motion to Dismiss

Of course, defendants' misclassification of their consumer products argument as jurisdictional, does not render it moot. Rather, the court will consider the motion as if it had been made under Rule 12(b)(6). *See Morrison*, 561 U.S. 247 (proceeding to analyze motion as one made under 12(b)(6) after determining party had misclassified it as a 12(b)(1) motion); *Miller*, 600 F.3d at 732-33 (same); *Donatello v. Cty. of Niagara*, No. 15-CV-39V, 2016 WL 3090552 (W.D.N.Y. June 2, 2016) (same). In addition, defendants argue that the complaint is deficient because it fails to allege: (1) an underlying violation

of CPSA to trigger whistleblowing protections; and (2) plaintiff's employer was AWG at the time the alleged misconduct took place.[14]

Under Rule 12(b)(6), a complaint must contain sufficient factual matter that, if accepted as true, makes a claim for relief "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Twombly*, 550 U.S. at 570). It is not enough to "plead facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678. Under this standard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556); *McCauley v. City of Chi.*, 651 F.3d 611, 615 (7th Cir. 2011) (following the plausibility standard articulated in *Iqbal* and *Twombly*).[15]

---

[14] This challenge also touches on Rule 8, which requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, mere "labels and conclusions, or a formulaic recitation of the elements of a cause of action" are not sufficient to survive a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Riley v. Vilsack*, 665 F. Supp. 2d 994, 997 (W.D. Wis. 2009) (holding that the plaintiff need not provide detailed factual allegations, but must provide "enough facts to raise [the claim] above the level of mere speculation"). Of course, even if plaintiff's allegations are sufficient to place defendants on notice, the allegations must still state a claim upon which relief may be granted, and so it is this requirement that is the focus of the discussion above.

[15] As described in the background section above, defendants filed a declaration with their motion to dismiss, the Johnson declaration, which offers facts that are extrinsic to the pleadings. As such, the court may not consider the information presented in the declaration without converting defendants' motion into one for summary judgment. Fed. R. Civ. P. 12(d). Because converting defendants' motion into one for summary judgment would require an opportunity for plaintiff to provide additional evidence and argument, the court will instead consider only those facts alleged in the complaint and in the administrative record. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (trial courts have discretion in deciding whether to exclude proffered material or convert the motion). Of course, defendants may offer proof on the Johnson declaration and elsewhere, as part of a future motion for summary judgment.

## A. Definition of Consumer Products

The parties dispute whether the window frames, bolts and curtain wall products manufactured by Wausau constitute "consumer products" as that term is defined in CPSA. A consumer product is

> any article, or component part thereof, produced or distributed (i) for sale to a consumer for use in or around a permanent or temporary household or residence, a school, in recreation, or otherwise, or (ii) for the personal use, consumption or enjoyment of a consumer in or around a permanent or temporary household or residence, a school, in recreation, or otherwise. . . .

15 U.S.C. § 2052(a)(5). Although both the statute and administrative regulations remain silent as to the definition of "consumer," interpretive guidance emerges from the legislative intent behind the Act, as well as from opinions issued by the Consumer Product Safety Commission (the "Commission" or "CPSC").

Congress intended CPSA "to protect the *public* against unreasonable risks of injury associated with consumer products." 15 U.S.C. § 2051(b)(1) (emphasis added). Accordingly, the Commission has construed the CPSA broadly to extend to products "regardless of where the products are used, consumed, or enjoyed." CPSC Advisory Op. No. 240 (Aug. 20, 1976); *see also* CPSC Advisory Op. No. 134 (Oct. 4, 1974) ("The primary purpose of the Consumer Product Safety Act is to protect the public against unreasonable risks of injury associated with consumer products."). This broad reading of the statute is in accordance with the legislative history of the Act, which readily discloses Congress's intent that the statute reach a wide array of products. *See* H.R. Rep. No. 9215, 92d Cong., 2d Sess. 27 (the definition of consumer product is "broadly stated to include

any article which is produced or distributed for sale to, or for the use, consumption, or enjoyment of a consumer in or around a household or residence, a school, in recreation, or otherwise"). Thus, products such as window shades, folding doors and self-adhesive wall coverings constitute consumer products under the statutory definition.[16] CPSC Advisory Opinion No. 200 (Apr. 28, 1975).

While consumer products do *not* include "any article which is not customarily produced or distributed for sale to, or use or consumption by, or enjoyment of, a consumer," 15 U.S.C. § 2052(a)(5)(A), this limitation serves to prevent "true industrial products" from falling under the scope of the statute. CPSC Advisory Op. No. 134 (Oct. 4, 1974) (quoting H.R. Rep. No. 9215, 92d Cong. 2d Sess. 27). Thus, a lawn mower used by industrial farms and designed for, marketed and sold exclusively to farmers is not a consumer product. CPSC Advisory Op. No. 278 (Aug. 14, 1980). Nor is an industrial aerial basket. CPSC Advisory Op. No 231 (Jan. 1, 1976). However, even products that are exclusively sold to industrial or institutional buyers "would be included within the definition of consumer product so long as they were produced or distributed for use of consumers." CPSC Advisory Op. No. 134 (Oct. 4, 1974) (quoting H.R. Rep. No. 9215, 92d Cong. 2d Sess. 27).

A plain reading of CPSA suggests that the products manufactured by Wausau fall under the definition of consumer products. Window frames, bolts, and curtain wall

---

[16] Other, similar, items that have been found to be consumer products include: glass doors, *ASG Indus., Inc. v. Consumer Prod. Safety Comm'n*, 593 F.2d 1323 (D.C. Cir. 1979); wallboard, CPSC Advisory Op. No. 55 (Dec. 21, 1973); and door hinges and handles, CPSC Advisory Op. No. 132 (Aug. 30, 1974).

products are "articles . . . produced or distributed . . . for [] personal use, consumption or enjoyment . . . in or around a . . . household or residence, a school, in recreation, or otherwise." 15 U.S.C. § 2052(a)(5). As an initial matter, Wausau's products are distinct articles, or "particular items or objects." The New Oxford American Dictionary (2001). The products are also used or consumed in or around a variety of buildings, including condominiums, schools and other government structures, and they are exposed to the general public. Moreover, given the broad interpretation typically given to the definition of consumer product, the users of these buildings would constitute "consumers," thus completing the statutory checklist. Moreover, allowing the statutory definition of consumer products to reach window frames, bolts and curtain wall products would also match common sense and previous determinations that items such as window shades, door hinges and door handles qualify under CPSA. *See infra* discussion at n.16.

Nevertheless, defendants offer two principal arguments as to why this simple textual analysis should not control. *First*, citing *Consumer Prod. Safety Comm'n v. Anaconda Co.*, 593 F.2d 1314 (D.C. Cir. 1979), they contend that CPSA cannot regulate any product that is a component part of a dwelling. Although on the surface that case does appear to support defendants' position, what troubled the *Anaconda* court was that the central wiring system at issue was not a "distinct article of commerce," but rather a "physical entity that might exist only at an intermediate stage of production." 593 F.2d at 1319-20. Allowing the wiring system in question to qualify as a consumer product would thus allow CPSA to reach housing, where it should not. *Id*. at 1320. In contrast, the *Anaconda* decision specifically allowed for the possibility that wiring could constitute a consumer product if it

were distributed as a distinct article of commerce and installed into a residential building by a consumer. *Id.* at 1321. Indeed, later on the same day of the *Anaconda* decision, the D.C. Circuit confirmed that "distinct articles of commerce" may qualify as consumer products, even when installed in residential buildings. *ASG Indus., Inc. v. Consumer Prod. Safety Comm'n*, 593 F.2d 1323, 1327-28 (D.C. Cir. 1979) (wired glass products such as porch doors are consumer products, and "a product may qualify as a 'consumer product' if it either is produced or distributed as a distinct article of commerce . . . or is produced or distributed as a component part of such a distinct article").

The rule that emerges from these cases and from other judicial treatment of the question is not, therefore, that any product incorporated into a house ceases to be a consumer product. Quite the reverse -- distinct articles of commerce do not cease to be consumer products simply by being incorporated into a residential structure. *See Kaiser Aluminum & Chem. Corp. v. U.S. Consumer Prod. Safety Comm'n*, 574 F.2d 178, 180 (3d Cir. 1978) ("We see nothing in the plain language of the Act [CPSA] suggesting that the word 'article,' a noun denoting any material thing, excludes components incorporated in a residence if they otherwise fit within the definition."); *cf. Miller*, 600 F.3d at 735-37 (whether windows were "consumer products" as defined in Magnuson-Moss Warranty Act partly depended on whether they were purchased separately as windows or whether as part of a house construction contract).

Unlike in *Anaconda*, the products at issue in this case are not central components of a house that cannot exist independently. They are produced and sold separately to various customers and are used on various buildings. Thus, they are distinct articles of commerce

and do not lose their status as consumer products merely because they may be incorporated into residential structures. Furthermore, while *Anaconda* depended on the stated goal of excluding housing from the scope of CPSA, it is not clear that a similar concern need apply in this case, where the products were incorporated into several non-residential buildings.

Defendants' *second* argument as to why their products should be excluded from the statutory definition involves an exception contained in 15 U.S.C. § 2052(a)(5)(A). In short, defendants contend that Wausau distributes its products almost exclusively to contractors and subcontractors, who modify the products and put them to commercial uses. This *might* potentially move Wausau's products into the realm of "industrial products," and thus remove them from CPSA's ambit.[17] For reasons addressed above, however, the court cannot address this argument as part of a Rule 12(b)(6) motion because defendants rely exclusively on the Johnson declaration for factual support. (Defs.' Br. (dkt. # 7) 11-12.) As alleged in the complaint, Wausau sells its products to a variety of companies, and the products are installed in many buildings. The exact identity of those recipient companies is uncertain, and the court will infer at the pleading stage that not all are industrial users, or if they are, that they may ultimately be intended for use by ordinary consumers. "Other companies" could, for instance, include a law firm office, or a department store that may then sell those same products to the public.

---

[17] Even if Wausau's sales practices are accurately described in the Johnson declaration, it is unclear whether that description would disqualify their products from being considered consumer products, since the administrative and legislative history suggests that even products sold only to industrial buyers can be consumer products if they are intended for ultimate use by a consumer. *See* CPSC Advisory Op. No. 134 (Oct. 4, 1974); *cf. Robert K. Bells Enters., Inc. v. Consumer Prod. Safety Comm'n*, 645 F.2d 26 (10th Cir. 1981); *but see Sara Lee Corp. v. Homasote Co.*, 719 F. Supp. 417 (D. Md. 1989).

Construing all reasonable inferences in plaintiff's favor, the window frames, bolts and curtain wall products produced by Wausau qualify as consumer products as defined in 15 U.S.C. § 2052(a)(5).  Defendants' motion to dismiss on that basis is, therefore, denied.

## B.  Sufficiency of the Complaint

Finally, as mentioned, defendants raise two concerns regarding the sufficiency of the complaint.  First, they argue that the whistleblowing protections in 15 U.S.C. § 2087 do not apply because plaintiff did not allege that AWG was his employer.  While it is true that 15 U.S.C. § 2087(a) protects only "employees" against unlawful retaliation, plaintiff *did* allege that he was AWG's employee when his claim arose.  Specifically, plaintiff alleged that:  he was employed by Wausau; Wausau is a business unit of AWG; and AWG paid his salary.  These facts establish that plaintiff was an "employee" of AWG under any common definition of the word, including the one provided in the administrative rules.[18] To the extent necessary, the court will also infer for purposes of Rule 12(b)(6) that plaintiff maintained this status during the period of defendants' retaliation and plaintiff's ultimate termination.

Second, defendants argue that plaintiff did not allege an underlying violation of CPSA to trigger whistleblowing protections.  Plaintiff brought his CPSIA claim citing only 15 U.S.C. § 2087, which protects employees against retaliation for, *inter alia*, providing information to an employer "relating to any violation of . . . any provision of this chapter."

---

[18] "Employee means an individual presently or formerly working for, an individual applying to work for, or an individual whose employment could be affected by a manufacturer, private labeler, distributor, or retailer."  29 C.F.R. 1983.101(h).

Defendants argue that plaintiff never cited any other provision of the chapter, such as 15 U.S.C. § 2068, which sets out substantive prohibitions, and that plaintiff failed to specify which code regulations Wausau violated.

While a plaintiff's conclusory statements, unsupported by facts in the complaint, are not sufficient to plead the elements of a cause of action, *Ashcroft*, 556 U.S. at 678, a plaintiff need not specify a legal theory or statute under which a claim arises. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. and Nw. Ind.*, 786 F.3d 510, 518 (7th Cir. 2015) ("the Federal Rules of Civil Procedure do not require code pleading"). Instead, a complaint need contain "only factual allegations that give the defendant fair notice of the claim for relief and show the claim has 'substantive plausibility.'" *Id.*

Here, plaintiff alleged that he "engaged in protected activity under the CPSIA when he lodged his complaint indicating that Apogee's suppliers had been providing non-compliant materials to Wausau [] which were ultimately installed on private and government buildings." (Compl. (dkt. #1) ¶ 51.) For factual support, plaintiff alleged that Wausau had used materials "that did not meet the required specifications pertaining to material strengths, specifically alloys and temper" and "did not meet the code minimums as directed by [OSHA]." (*Id.* at ¶¶ 19, 29.) Plaintiff also alleged that he was terminated for reporting those infractions. Although plaintiff failed to name the specific statutory and code provisions defendants violated, he was not required to do so. Instead, plaintiff provided defendants with notice of the activities that spurred this lawsuit, and he offered ample factual material with which to color in the details. Therefore, plaintiff met his

burden to place defendants on notice of his claims and served up enough factual support

to avoid falling on the wrong side of the plausibility requirements.


ORDER

IT IS ORDERED that:

1) Defendants' motion to dismiss (dkt. # 6) is GRANTED with respect to defendants Apogee Enterprises, Inc., Tubelite, Inc., Harmon, Inc., Alumicor, Inc. and Linetec, the Sarbanes-Oxley claim against the remaining defendant, Apogee Wausau Group, Inc. d/b/a Wausau Window and Wall, but DENIED with respect to the CPSIA claim against that same remaining defendant.

2) Plaintiff's motion to file an amended brief (dkt. #14) is DENIED.

Entered this 31st day of August, 2017.

BY THE COURT:

/s/

_____
William M. Conley
District Judge